401 So.2d 1107 (1981)
Steven Fred ROSSLOW, Appellant,
v.
STATE of Florida, Appellee.
No. 57835.
Supreme Court of Florida.
July 16, 1981.
Selig I. Goldin of Goldin & Cates, Gainesville, for appellant.
Jim Smith, Atty. Gen., Charles A. Stampelos and Lawrence A. Kaden, Asst. Attys. Gen., Tallahassee, for appellee.
OVERTON, Justice.
This is a direct appeal from a trial court's order expressly holding a state statute constitutional. We have jurisdiction under article v, section 3(b)(1), Florida Constitution (1972), and affirm.
Appellant was charged with transporting citrus fruit in fresh form without a "certificate of inspection and maturity" as required by section 601.46(1), Florida Statutes (1977). That section provides in pertinent part:
Condition precedent to sale of citrus fruit. 
(1) It is unlawful, except as provided in s. 601.50, for any person to sell or offer for sale, to transport, prepare, receive, or deliver for transportation or market any citrus fruit in fresh form unless such fruit has matured in accordance with the maturity standards and is accompanied by a certificate of inspection and maturity thereof issued by a duly authorized citrus fruit inspector of the Department of Agriculture and Consumer Services.
Section 601.50, Florida Statutes (1977), the exception provision enumerated in section 601.46, states:
Exemptions; sale or shipment of citrus or citrus products for certain purposes. 
Irrespective of the provisions of ss. 601.45, 601.46, 601.48, 601.49, 601.51, and 601.52, the Department of Citrus under such precautionary rules and regulations as it may deem expedient may permit sale or shipment of citrus fruit or the canned or concentrated products thereof without the issuance of and filing of inspection certificate and without the grade being shown on the container thereof, of:
(1) Intrastate shipments of fresh citrus fruit for consumption or use within the state;
(2) Shipments to be used for charitable or unemployment relief purposes;
(3) Shipments to the United States Government or any of its agencies and *1108 interstate shipments to any packinghouse, canning plant, or concentrate plant for commercial processing, as may be defined by the Department of Citrus; or to fresh fruit juice distributors outside the state;
(4) Shipments by any method of transportation by "gift fruit shippers," as defined by the Department of Citrus, but such shipments shall not be for the purpose of resale by the consignee thereof; but, provided however that, no such rule or regulation issued hereunder shall permit or allow the sale or shipment of citrus fruit deemed by this section to be immature and unfit for human consumption nor of canned or concentrated products thereof prepared or made from citrus fruit deemed by this law to be immature and unfit for human consumption; but, provided further, that shipments under subsections (1) and (4) shall meet such minimum grade standards as may, from time to time, be established by the Department of Citrus; and, provided further that such rules and regulations shall provide for the due collection of any advertising taxes and inspection fees that may be due thereon.
Section 601.46 makes it unlawful to transport citrus without an inspection certificate, except as provided in section 601.50. It is appellant's contention that, because section 601.50 gives the Department of Citrus the authority to exempt certain categories of citrus from the certificate requirement, the department in effect chooses which acts are illegal under section 601.46 and which acts are not. This, appellant claims, is a constitutionally prohibited delegation of legislative authority. See art. III, § 1, Fla. Const. We reject this contention.
Appellant correctly states that the legislature may not, absent constitutional authority to the contrary, delegate its legislative powers to others. We have frequently so held. D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968); Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919); State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692 (1918); State v. Atlantic Coast Line Railway, 56 Fla. 617, 47 So. 969 (1908).
We find, however, that the legislature's enactment of section 601.46, even with the exception provision contained in section 601.50, does not constitute prohibited delegation. In State v. Atlantic Coast Line Railroad, we said:
The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose.
56 Fla. at 636-37, 47 So. at 976 (emphasis ours). It is our conclusion that the questioned section meets the above criteria.
Section 601.46(1) explicitly sets forth what constitutes unlawful action under the section, transporting citrus without an inspection certificate. Moreover, section 601.50 sufficiently defines and limits the authority of the Department of Citrus in creating exceptions to the certificate requirements to meet all constitutional mandates.
Accordingly, we affirm and hold section 601.46, Florida Statutes (1977), constitutional.
It is so ordered.
ADKINS, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion in which SUNDBERG, C.J., and ENGLAND, J., concur.
BOYD, Justice, dissenting.
Section 601.46(1), Florida Statutes (1977), defines a criminal offense. The offense there defined is a misdemeanor of the first degree. § 601.72, Fla. Stat. (1977). The definition of the offense contains the clause, "except as provided in s. 601.50... . Section 601.50 creates several broadly defined categories of activity which are excepted *1109 from the operation of section 601.46. Section 601.50 delegates to the Department of Citrus the power to define the exceptions. Therefore the definition of the criminal offense created by section 601.46 depends on the interpretation given by the department to the exceptions in section 601.50. The two sections together operate to give the department legislative power.
Article III, section 1, Florida Constitution, vests the legislative power of the state in the legislature. Article II, section 3 forbids the exercise of governmental power except by the branch in which it is vested. The doctrine against delegation of legislative power has been expressed in various ways:
Under the fundamental document adopted and several times ratified by the citizens of this State, the legislature is not free to redelegate to an administrative body so much of its lawmaking power as it may deem expedient.
Askew v. Cross Key Waterways, 372 So.2d 913, 924 (Fla. 1978).
It is well settled that the legislature cannot clothe an administrative agency like the Commission in this case with legislative or judicial powers.
State ex rel. Watson v. Caldwell, 156 Fla. 618, 622, 23 So.2d 855, 857 (1945).
The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law... .
State v. Atlantic Coast Line Railroad, 56 Fla. 617, 636, 47 So. 969, 976 (1908).
Under section 601.46, it is a first-degree misdemeanor to sell, offer for sale, transport, prepare, receive, or deliver for transportation or market "any citrus fruit in fresh form unless such fruit has matured in accordance with the maturity standards and is accompanied by a certificate of inspection and maturity... ."
Careful examination of the provisions of section 601.50 reveals that the legislature has attempted to delegate to the department the power to declare when the sale or shipment of immature and uncertified fruit is to be forbidden under section 601.46(1) and therefore punishable under section 601.72.
Section 601.50 authorizes the department to permit, "under such precautionary rules and regulations as it may deem expedient," the sale or shipment of fresh, canned, or concentrated citrus fruit without a certificate of inspection and without grading. Although the section lacks grammatical correctness and is therefore unclear as to its meaning, it then sets out four subsections which I presume are the categories of shipments to be so permitted. The department, then, may decide whether intrastate shipments of fresh fruit for intrastate use will be permitted without inspection and grading. The same authority is delegated with regard to shipments destined for use in charitable or unemployment relief. Subsection (3) introduces additional elements of unfettered departmental discretion. The department may permit shipments to agencies of the United States, and interstate shipments to packing, canning, and processing houses, as defined by the department, and to fresh fruit juice distributors. Under subsection (4), the department may allow uninspected, ungraded fruit to be shipped by "gift fruit shippers" as defined by the department.
Section 601.50 concludes with a general proviso prohibiting the adoption of any rule permitting "the sale or shipment of citrus fruit deemed by this section to be immature and unfit for human consumption nor of canned or concentrated products thereof prepared or made from citrus fruit deemed by this law to be immature and unfit for human consumption... ." Id. (emphasis added). A further proviso requires shipments under subsections (1) and (4) to meet standards adopted by the department.
The legislature may not authorize an executive agency to make law. This is especially true, it would seem, when it comes to the business of defining criminal offenses. With its broad power to define the exceptions to section 601.46, the Department of Citrus has the power to define the criminal *1110 offense there proscribed. This is impermissible and I dissent.
SUNDBERG, C.J., and ENGLAND, J., concur.