Mr. Gordon B. Johnston Marion County Attorney 601 Southeast 25th Avenue Ocala, Florida 34471
Dear Mr. Johnson:
On behalf of the Marion County Board of County Commissioners and the Clerk of the Circuit Court, you ask substantially the following questions:
1) Are donations, regardless of the source, received by the county and deposited into the county general revenue account considered to be public funds that must be expended for a public purpose?
2) May the Marion County Clerk of the Circuit Court disburse contributed funds deposited into the general revenue fund of the county for the benefit of the family of a deputy sheriff killed in the line of duty when the funds were contributed and received for that purpose?
According to your letter, the Marion County Sheriff is soliciting contributions to pay for a statue honoring a Marion County deputy sheriff who was killed in the line of duty. The statue would be placed at a substation named in the deputy sheriff's honor. Any excess funds beyond the cost of the statue would be used to pay any unpaid funeral expenses and for the benefit of the deputy's minor child. The sheriff has proposed that all funds received be deposited into the county's general fund. The clerk has expressed his concern that funds deposited into the county general fund are county funds that may only be expended for a public purpose pursuant to Article VII, section 10, Florida Constitution.[1]
The sheriff has referred to the provisions of section 496.415(11), Florida Statutes, which make it unlawful for any person in connection with the planning, conduct, or execution of any solicitation or charitable or sponsor sales promotion to solicit contributions from another person or organization while wearing the uniform of an emergency service employee or law enforcement officer, or while on duty as an emergency service employee or law enforcement officer, except:
"where the solicitation is for an organization exempt from federal income tax under s. 501(c)(3) of the Internal Revenue Code or except whensoliciting contributions to benefit an emergency service employee or lawenforcement officer who has been injured in the line of duty or tobenefit the family or dependents of an emergency service employee or lawenforcement officer who has been killed in the line of duty." (e.s.)
Question One
According to your letter, the funds received would be deposited into the county general revenue fund. Monies received by the county and deposited into the county general revenue fund would appear to constitute county funds subject to constitutional and statutory budgetary requirements and limitations.[2] I am not aware of, nor have you drawn my attention to, any provision authorizing county officials to receive and process, through their official accounts and records, private donations to be paid to private individuals. As Justice Ervin stated in his concurring opinion in State ex rel. Kirkland v. Kirk,[3]
"It is elementary that neither the State nor a public officer may accept donations of private funds or expend the same except as may be duly authorized by law. However, it has long been the policy of the State, reflected in our laws and departmental interpretations thereof, to accept gifts of private funds for proper state purposes provided the same are freely given and are uncontrolled by their donors and do not present conflicts of interests or further special interests."
Moreover, Article VII, section 10, Florida Constitution, prohibits the state and its subdivisions from using their taxing power or pledging public credit to aid any private person or entity. You question, however, whether Article VII, section 10 applies since neither the taxing power nor the credit of the county are implicated.
The courts, however, have recognized that the expenditure of public funds, regardless of their source, must satisfy a public purpose. If the county's taxing power or pledge of credit is involved, the improvements must serve a paramount public purpose.[4] If, however, neither the taxing power nor a pledge of credit is involved, then it is enough to show only that a public purpose is involved.[5]
As the Florida Supreme Court stated in State v. Housing Finance Authorityof Polk County,[6]
"Under the constitution of 1968, it is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong. State v. PutnamCounty Development Authority, 249 So.2d 6 (Fla. 1971). Of course, public bodies cannot appropriate public funds indiscriminately, or for the benefit of private parties, where there is not a reasonable and adequate public interest. An indirect public benefit may be adequate to support the public participation in a project which imposes no obligation on the public, and the qualification of the direct beneficiary complies with the principles of due process and equal protection."
More recently, in Northern Palm Beach County Water Control District v.State,[7] the Court, in considering the provisions of Article VII, section 10, Florida Constitution, stated:
"[I]n order to determine if the bonds run afoul of the constitution, we must first determine whether the District's taxing power or pledge of credit is involved. If either is involved, then the improvements must serve a paramount public purpose. See Orange County Indus. Dev. Auth. v.State, 427 So.2d 174 (Fla. 1983). However, if we conclude that neither is involved, then the paramount public purpose test is not applicable and "it is enough to show only that a public purpose is served." Linscott,443 So.2d at 101."
In light of the above, I am of the opinion that donations, regardless of the source, received by the county and deposited into the county general revenue account are considered to be county funds, the expenditure of which must serve a public purpose.
Question Two
While it is my opinion that donations received by the county and deposited into the county general revenue account are county funds that must be expended for a public purpose, it does not necessarily follow that county funds may not be appropriated to benefit the families of law enforcement officers killed in the line of duty. It is the responsibility of the county commission to make the appropriate findings that such an expenditure serves a public purpose and appropriately budget the funds. For example, in Attorney General Opinion 83-05, this office concluded that under proper circumstances, and based upon appropriate legislative findings and pursuant to the exercise of the county's home rule powers, it was a matter of legislative judgment of the county commission whether to expend county funds for incentive awards for certain county employees in recognition of superior job-related achievements and to pay for retirement dinners or for coffee and refreshments for visitors. That opinion made it clear that it is the county commission that must make the appropriate legislative findings as to the purpose of the ordinance providing for such an incentive program and the benefits that would accrue to the county from such a program; such legislative functions and determinations cannot be delegated to the Attorney General nor can the Attorney General undertake to make such legislative findings and determinations on behalf of the county.[8]
Moreover, this office would note that the Legislature has determined that the payment of additional death benefits to law enforcement officers and the provision of financial assistance to victims of crime serves a public purpose.[9]
Accordingly, I am of the opinion that donations, regardless of the source, received by the county and deposited into the county general revenue account are county funds, the expenditure of which must serve a public purpose. Such funds may be disbursed to the family of a deputy sheriff killed in the line of duty provided the county commission makes an appropriate legislative determination that such an expenditure serves a public purpose and the funds have been appropriately budgeted therefor.[10]
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] This office has recognized the auditing function of the clerk of the court as the ex officio auditor of county funds. See Op. Att'y Gen. Fla. 70-134 (1970), stating:
"The auditing function of the clerk includes more than the arithmetical determination as to the amount of the claim being presented for payment and the clerk has a duty to determine the legality of an expenditure before dispensing public funds. When an examination by the clerk as auditor of a particular claim presented for payment leads him to believe that the expenditure is not authorized by law, or is otherwise illegal, the clerk may properly withhold his approval of payment. This action by the clerk is in accord with the apparent purpose of the constitutional provision, making the clerk of the circuit court ex officio auditor of the county, which is to provide a check and balance system that insuresproper expenditure of public funds." (Emphasis supplied.)
And see, Op. Att'y Gen. Fla. 88-61 (1988), stating that it is clearly within the duty and responsibility of the circuit court clerk acting as county auditor to make a determination of the legality of the claims which are presented for payment by the clerk as custodian of the county funds in order to pay only those obligations which are proper expenditures of public funds. See also s. 129.09, Fla. Stat., making the clerk personally liable for signing any warrant for the payment of any claim or bill or indebtedness against any county funds in excess of the expenditure allowed by law, or county ordinance, or paying any illegal charge against the county, or to pay any claim against the county not authorized by law, or county ordinance.
[2] Compare State v. Florida State Improvement Commission, 30 So.2d 97,99 (Fla. 1947), in which the Court recognized that funds received by the state treasurer pursuant to statute and held in a special trust fund were not state moneys but were held by the treasurer as custodian.
[3] 198 So.2d 331, 332 (Fla. 1967). Cf. Advisory Opinion to theGovernor, 200 So.2d 534 (Fla. 1967) ("We find nothing in the State Constitution that precludes the receipt and use by the state or its officials of contributions from citizens provided the same are received and used for a public purpose in the manner authorized by the Legislature.").
[4] See, Orange County Industrial Development Authority v. State,427 So.2d 174 (Fla. 1983).
[5] Linscott v. Orange County Industrial Development Authority,443 So.2d 97 (Fla. 1983).
[6] 376 So.2d 1158, 1160 (Fla. 1979).
[7] 604 So.2d 440 (Fla. 1992).
[8] And see Op. Att'y Gen. Fla. 84-49 (1984).
[9] See, e.g., s. 112.19, Fla. Stat, and ss. 960.01-960.28, Fla. Stat., the "Florida Crimes Compensation Act," respectively.
[10] See, Burton v. Dade County, 166 So.2d 445, 447 (Fla. 1964) (county funds, generally, may be used to accomplish any legitimate county purpose). And see Op. Att'y Gen. Fla. 70-134 (1970) in which this office concluded that absent clear unreasonableness or an obvious abuse of discretion by the county's governing body in enacting the ordinance, the clerk could rely upon the ordinance as a legislative declaration that a county purpose was served.